SHEA, EXECUTIVE- DIRECTOR, DEPARTMENT
OF SOCIAL SERVICES OF COLORADO, ET AL.
v. VIALPANDO

No. 72–1513. Argued February 26, 1974—Decided April 23, 1974

Powell, J., delivered the opinion for a unanimous Court.

*Douglas D. Doane* and *Charles B. Lennahan,* Special Assistant Attorneys General of Colorado, argued the cause for petitioners. With them on the brief were *John P. Moore,* Attorney General, *John E. Bush,* Deputy Attorney General, and *Norman A. Palermo.*

*Tom W. Armour* argued the cause for respondent. With him on the brief were *James W. Kin, Steven J. Cole,* and *Henry A. Freedman.*

Mr. Justice Powell delivered the opinion of the Court.

In administering the Aid to Families with Dependent Children (AFDC) program of the Social Security Act of 1935, as amended (Act), 42 U. S. C. § 601 *et seq.,* state agencies are required by § 402 (a)(7) of the Act, 81 Stat. 881, 42 U. S. C. § 602 (a)(7), to "take into consideration . . . any expenses reasonably attributable to the earning of . . . income." Such employment-related expenses are deducted from an AFDC applicant's income in the process of determining eligibility for assistance. We granted certiorari, 414 U. S. 999 (1973), to determine whether, in light of § 402 (a)(7), a State may adopt a standardized allowance for expenses attributable to the

earning of income which does not allow an applicant to deduct expenses that exceed the standard. We hold that it may not.

# I

The AFDC program is designed to provide financial assistance to needy dependent children and the parents or relatives who live with and care for them. A principal purpose of the program, as indicated by 42 U. S. C. § 601, is to help such parents and relatives "to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection . . . ." The program "is based on a scheme of cooperative federalism," *King v. Smith,* 392 U. S. 309, 316 (1968). It is financed in large measure by the Federal Government on a matching-fund basis, and participating States must submit AFDC plans in conformity with the Act and the regulations promulgated thereunder by the Department of Health, Education, and Welfare (HEW). The program is, however, administered by the States, which are given broad discretion in determining both the standard of need and the level of benefits. See *Jefferson v. Hackney,* 406 U. S. 535, 541 (1972); *Rosado v. Wyman,* 397 U. S. 397, 408–409 (1970); *Dandridge v. Williams,* 397 U. S. 471, 478 (1970); *King v. Smith, supra,* at 318–319.

Under HEW regulations all AFDC plans must specify a statewide standard of need, which is the amount deemed necessary by the State to maintain a hypothetical family at a subsistence level. Both eligibility for AFDC assistance and the amount of benefits to be granted an individual applicant are based on a comparison of the State's standard of need with the income and resources available to that applicant. 45 CFR § 233.20 (a)(2)(i). The "income and resources" attributable to an applicant, defined in 45 CFR §§ 233.20 (a)(6) (iii–viii),

consist generally of "only such net income as is actually available for current use on a regular basis . . . and only currently available resources." 45 CFR § 233.20 (a) (3) (ii)(c). See also HEW, Simplified Methods for Consideration of Income and Resources (1965). In determining net income, any expenses reasonably attributable to the earning of income are deducted from gross income. 42 U. S. C. § 602 (a)(7). If, taking into account these deductions and other deductions not at issue in the instant case, the net amount of "earned income" is less than the predetermined statewide standard of need, the applicant is eligible for participation in the program and the amount of the assistance payments will be based upon that difference. 45 CFR §§ 233.20 (a) (3) (ii) (a) and (c).

Prior to May 1970, Colorado's AFDC regulations permitted the deduction from income of all expenses reasonably attributable to employment, including but not limited to the actual cost of transportation, if "essential to retain employment." [1]    Child care expenses and mandatory payroll deductions were also treated as employment-related expenses, and all such expenses were computed on an individualized basis. In May 1970, this policy was changed by the establishment of a maximum transportation work-expense allowance of either $30 per month, if the use of a car was essential, or the actual

---

[1] Section 4313.13, vol. 4, Colorado Division of Public Welfare Staff Manual (effective March 1970), provided in part:

"Employment expenses which are deducted from the gross amount received by an employed recipient include, but are not restricted to:

"Transportation expenses:

"Public transportation to and from work is allowed at actual cost. When the recipient must use his own car as transportation to and from work, 5¢ a mile is allowed, plus parking fees if required.  Purchase, repair, or upkeep of a vehicle, providing it is essential to retain employment and the plan therefore is approved by the county department."

expense of public transportation. Effective July 1, 1970, the Colorado work-expense allowance regulation was again amended to provide that in addition to mandatory payroll deductions and child care expenses:

> "For employment expenses such as transportation, special clothing, union dues, special education or training costs, telephone, additional food or personal needs, etc., which are an obligation due to the employment, an allowance of $30 per month is made for such costs."[2]

Thus, while Colorado continued to allow individualized treatment of mandatory payroll deductions and child care costs, all other work-related expenses were subjected to a uniform allowance of $30, even if an applicant could prove actual expenses in excess of that figure. The Regional Commissioner of the Social and Rehabilitation Service of HEW thereafter accepted the incorporation of this provision into Colorado's AFDC plan.[3]

---

[2] Section 4313.13, vol. 4, Colorado Division of Public Welfare Staff Manual (effective July 1970). The $30 standardized figure is an average based upon a statewide statistical survey of work expenses incurred by persons in the AFDC program in Colorado. It was calculated by examining the work expenses of every AFDC recipient in Colorado for the last month of each quarter of the year from March 1969 to March 1970. The expenses included transportation, union dues, uniforms and tools, telephone, and general items, but excluded the cost of child care. The statewide average varied from a low of $30.55 in June 1969 to a high of $36.93 in March 1970.

[3] According to HEW, 20 States, including Colorado, presently employ a standard work-expense allowance in combination with actual child care expenses, and in some cases mandatory payroll deductions, and an additional 15 States use other systems of mandatory standard allowances for one or more major items of work expense. Brief for United States as *Amicus Curiae* 5. These standard allowances have often been the subject of litigation. A number have been held invalid. See *Anderson* v. *Graham*, 492

When this suit was commenced in July 1970, Mrs.
Vialpando was employed some eight miles from the
small Colorado community in which she resided with
her two-year-old daughter. Since no public transporta-
tion was available, respondent traveled to and from work
each day in a used automobile she had purchased for
that purpose. In making the requisite eligibility and
assistance determinations under the Colorado AFDC pro-
gram, Mrs. Vialpando had been permitted to deduct
$47.30 in mileage costs and $63.81 in car payments[4]

F. 2d 986 (CA8 1973) (Nebraska $25 standard work-expense allow-
ance); *Connecticut State Dept. of Pub. Welfare* v. *HEW,* 448 F. 2d
209 (CA2 1971) (Connecticut regulation limiting the types of
deductible work-related expenses); *Adams* v. *Parham,* Civil Action
No. 16041 (ND Ga. Apr. 14, 1972) (unpublished) (Georgia $35
standard work-expense allowance); *Campagnuolo* v. *White,* Civil Ac-
tion No. 13968 (Conn. June 22, 1972) (unpublished) (Connecti-
cut $60 standard allowance for full-time employment expenses and
$40 standard allowance for part-time employment expenses); *Willi-
ford* v. *Laupheimer,* 311 F. Supp. 720 (ED Pa. 1969) (Pennsylvania
$50 maximum allowance for work expenses); *County of Alameda*
v. *Carleson,* 5 Cal. 3d 730, 488 P. 2d 953 (1971), appeal dismissed,
406 U. S. 913 (1972) (California work-expense regulation providing
for standard deductions ranging from $6 to $25 per month). In
*X* v. *McCorkle,* 333 F. Supp. 1109 (N. J. 1970), modified on
other grounds, *sub nom. Engelman* v. *Amos,* 404 U. S. 23 (1971), the
court approved in dicta New Jersey's $50 standard work-expense
allowance. In *Conover* v. *Hall,* 104 Cal. Rptr. 77 (1972), decision
vacated pending appeal in California Supreme Court, the court up-
held California's $50 standard allowance.

[4] Colorado did not make it a statewide practice to allow AFDC
recipients to deduct installment payments on the purchase of a car.
Consistent with the reasonableness requirement of 42 U. S. C. § 602
(a)(7), such determinations were, quite correctly, made on a case-
by-case basis. As counsel for the State commented at oral argument:
"This was an individual decision in an individual case in El Paso
County, Colorado. The same facts could have been presented to
an eligibility technician in another part of Colorado, who would have
made a decision . . . that the car was a personal expense, that a

from her monthly gross income. These deductions of approximately $110 per month, coupled with child care and mandatory payroll deductions, entitled her to an AFDC grant of $74 per month for herself and her daughter. The effect of the July 1970 amendment of the Colorado AFDC regulations was to reduce respondent's monthly deductions for transportation expenses related to employment from $110 to $30. The corresponding increase in her monthly net earned income rendered her ineligible for continued AFDC assistance.[5]

Respondent thereupon brought this class action in the United States District Court for the District of Colorado under 42 U. S. C. § 1983 and 28 U. S. C. §§ 1343 (3) and (4). She sought the convening of a three-judge District Court, and requested injunctive relief and a declaratory judgment that the Colorado standardized work-expense allowance violated § 402 (a)(7) of the Act and the Equal Protection Clause of the Fourteenth Amendment. Named as defendants were the Executive Director of the Colorado Department of Social Services and other state

---

job was available closer to the home of the recipient or that she could use public transportation." Tr. of Oral Arg. 33–34.

Respondent correctly concedes the State's responsibility for inquiring into whether claimed deductions are excessive or are truly attributable to the earning of income. Brief for Respondent 4. No doubt a State should scrutinize with particular care claimed expenses for automobiles or other items that in large measure are capital expenditures which will also be used for personal purposes unrelated to employment. Recognizing that States in administering AFDC programs must determine the reasonableness of work-related expenses does not, however, resolve the issue before us—whether States may ban all such expenses, no matter how reasonable and necessary, above a fixed cutoff figure.

[5] Another effect of the change in the State's AFDC regulation was to terminate respondent's eligibility for participation in Colorado's medical assistance program under Title XIX of the Social Security Act, 42 U. S. C. § 1396a (a)(10).

officers involved in administering Colorado's AFDC program. Upon stipulated facts and in reliance upon § 402 (a)(7) of the Act, the District Court in an unreported order granted respondent's motion for summary judgment and enjoined enforcement of the challenged regulation.[6] Finding the pendent federal statutory claim dispositive, the District Court properly did not reach the constitutional issue and properly did not convene a three-judge court. *Hagans* v. *Lavine,* 415 U. S. 528 (1974).

The United States Court of Appeals for the Tenth Circuit affirmed. 475 F. 2d 731 (1973). Relying on the language and the legislative history of § 402 (a)(7) and on other provisions of the Act, the court interpreted the words "any expenses" in § 402 (a)(7) to mean "all actual expenses," and held that the standardized allowance did not meet this requirement. The court reasoned that the statute could be read to permit the use of a standardized allowance for employment expenses, but only where such an allowance was adequate to cover all actual expenses. We agree.

## II

The Social Security Act of 1935, as originally enacted, 49 Stat. 620, did not expressly require that States allow AFDC beneficiaries to deduct from gross income expenses incurred in connection with the earning of income. The precursor to § 402 (a)(7), which appeared in the 1939

---

[6] While the case was pending in the District Court, respondent terminated her employment and again received an AFDC grant. Prior to the summary judgment hearing, she returned to work, again incurring work-related expenses substantially in excess of the $30 allowance. Although respondent continued to receive a grant despite her renewed employment, the amount was significantly lower than it would have been if she had been permitted to deduct work expenses in full.

amendments to the Act, 53 Stat. 1379, provided simply that

"the State agency shall, in determining need, take into consideration any other income and resources of any child claiming aid to dependent children."

The Social Security Board, the federal entity then overseeing the categorical public assistance programs, soon recognized that under the predecessor of the AFDC program [7] recipient families with working members incurred certain employment-related expenses that reduced available income but were not taken into account by the States in determining eligibility for AFDC assistance. In keeping with the Act's purpose of encouraging employment even when the income produced thereby did not eliminate entirely the need for public assistance, the Board recognized that a failure to consider work-related expenses could result in a disincentive to seek or retain employment. Accordingly, the States were permitted but not required to allow credit for work-related expenses in determining eligibility.[8]

---

[7] The AFDC program was originally known as "Aid to Dependent Children." 49 Stat. 627. In 1962, the name of the program was changed to "Aid and Services to Needy Families with Children," and the name of the assistance provided under the program changed to "Aid to Families with Dependent Children." Pub. L. 87-543, 76 Stat. 185, §§ 104 (a) (1) and 104 (a) (2).

[8] Section 3140 of the HEW Handbook of Public Assistance Administration, Part IV (1957), thus provided in part:

"A State public assistance agency may establish a reasonable minimum money amount to represent the combined additional cost of three items—food, clothing, and personal incidentals—for all employed persons. The State plan may provide that other items of work expense will be allowed when there is a determination that such expenses do, in fact, exist in the individual case."

See also Social Security Board, Bureau of Public Assistance, State Letter No. 4 (Apr. 30, 1942); HEW, State Letter No. 291 (Mar. 11, 1957) (indicating agency approval of such deductions).

As part of a general amendment of the Act in 1962, Pub. L. 87–543, 76 Stat. 185, Congress made mandatory the widespread but then optional practice of deducting employment expenses from total income in determining eligibility for assistance. Section 402 (a)(7) of the Act as thus amended provided in relevant part:

> "[T]he State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, *as well as any expenses reasonably attributable to the earning of any such income* . . . ." (Emphasis added.)

By its terms, § 402 (a)(7) requires the consideration of "any" reasonable work expenses in determining eligibility for AFDC assistance. In light of the evolution of the statute and the normal meaning of the term "any," we read this language as a congressional directive that no limitation, apart from that of reasonableness, may be placed upon the recognition of expenses attributable to the earning of income. Accordingly, a fixed work-expense allowance which does not permit deductions for expenses in excess of that standard is directly contrary to the language of the statute.

Petitioners, relying upon the "take into consideration" phrase of § 402 (a)(7), argue that the requirement of "consideration" is satisfied by the use of a statistical average of the actual expenses of all AFDC participants in the State. But this argument ignores the fact that the phrase "take into consideration" modifies "income and resources . . . *as well as* any expenses reasonably attributable to the earning of any such income" (emphasis added). Thus, it seems inescapable that whatever treatment is accorded income must also be extended to expenses attributable to the earning of income. And, it has consistently been the practice to compute the income of an AFDC applicant on an individual basis.

From the inception of the Act, Congress has sought to ensure that AFDC assistance is provided only to needy families, and that the amount of assistance actually paid is based on the amount needed in the *individual* case after other income and resources are considered.[9] Congress has been careful to ensure that *all* of the income and resources properly attributable to a particular applicant be taken into account, and this individualized approach has been reflected in the implementing regulations. For example, HEW's broad definition of "earned income" as "income in cash or in kind earned by a needy individual through the receipt of wages, salary, commissions, or profit from activities in which he is enagaged as a self-employed individual or as an employee," 45 CFR § 233.20 (a)(6)(iii), and its more specific descriptions of commissioned, salaried, and self-employment derived income in 45 CFR §§ 233.20 (a)(6) (iv–viii),[10] demonstrate its view that the determination

---

[9] See generally 42 U. S. C. § 601; H. R. Doc. No. 81, 74th Cong., 1st Sess. (1935); H. R. Rep. No. 615, 74th Cong., 1st Sess. (1935); S. Rep. No. 628, 74th Cong., 1st Sess. (1935); E. Witte, The Development of the Social Security Act 163–164 (1962).

[10] Title 45 CFR § 233.20 (a)(6) provides in part:

"(iv) With reference to commissions, wages, or salary, the term 'earned income' means the total amount, irrespective of personal expenses, such as income-tax deductions, lunches, and transportation to and from work, and irrespective of expenses of employment which are not personal, such as the cost of tools, materials, special uniforms, or transportation to call on customers.

"(v) With respect to self-employment, the term 'earned income' means the total profit from business enterprise, farming, etc., resulting from a comparison of the gross income received with the 'business expenses,' i. e., total cost of the production of the income. Personal expenses, such as income-tax payments, lunches, and transportation to and from work, are not classified as business expenses.

"(vi) The definition shall exclude the following from 'earned income': Returns from capital investment with respect to which the

of need in each case is to be based upon an assessment of the particular individual's available income and resources. Moreover, individualized consideration of available income and resources is clearly contemplated by HEW regulations providing for the exclusion of such items as scholarship funds and loans, see 45 CFR §§ 233.20 (a)(3)(ii–vii), and requiring that certain items such as food stamps be deducted, 45 CFR § 233.20 (a)(4). Thus, if income and expenses related to the production of income are to be treated alike, as the terms of § 402 (a)(7) appear to require, both must be considered on an individualized basis.[11]

individual is not himself actively engaged, as in a business (for example, under most circumstances, dividends and interest would be excluded from 'earned income'); benefits (not in the nature of wages, salary, or profit) accruing as compensation, or reward for service, or as compensation for lack of employment . . . .

"(vii) With regard to the degree of activity, earned income is income produced as a result of the performance of services by a recipient; in other words, income which the individual earns by his own efforts, including managerial responsibilities, would be properly classified as earned income, such as management of capital investment in real estate. Conversely, for example, in the instance of capital investment wherein the individual carries no specific responsibility, such as where rental properties are in the hands of rental agencies and the check is forwarded to the recipient, the income would not be classified as earned income.

"(viii) Reserves accumulated from earnings are given no different treatment than reserves accumulated from any other sources."

[11] Petitioners claim that HEW has permitted the use of standard work-expense allowances in recognition of the practical necessities of administration and that the Department's construction of its own regulations is entitled to great weight. See *Red Lion Broadcasting Co.* v. *FCC*, 395 U. S. 367 (1969); *Udall* v. *Tallman*, 380 U. S. 1 (1965). But the sound principle of according deference to administrative practice normally applies only where the relevant statutory language is unclear or susceptible of differing interpretations. See, e. g., *Townsend* v. *Swank*, 404 U. S. 282, 286 (1971). In view of the literal requirements of § 402 (a)(7), which accord with the

The literal import of § 402 (a)(7) is confirmed by the statute's legislative history. The congressional purpose in requiring the States to take into consideration employment expenses was clearly set forth in S. Rep. No. 1589, 87th Cong., 2d Sess., 17–18 (1962), which explained:

> "Under present law . . . States are permitted, but not required, to take into consideration the expenses an individual has in earning any income (this practice is not uniform in the country and in a substantial number of States full consideration of such expenses is not given). The committee believes that it is only reasonable for the States to take these expenses *fully* into account. *Under existing law if these work expenses are not considered in determining need, they have the effect of providing a disincentive to working since that portion of the family budget spent for work expenses has the effect of reducing the amount available for food, clothing, and shelter.* The bill has, therefore, added a provision in all assistance titles requiring the States to give consideration to any expenses reasonably attributable to the earning of income." (Emphasis added.)

Virtually identical language appears in the House Report. See H. R. Rep. No. 1414, 87th Cong., 2d Sess., 23 (1962).

---

federal policy underlying its enactment, we need not look to agency practice in this case. Moreover, HEW itself has not adhered to a uniform practice. Although in recent years HEW has construed § 402 (a)(7) to permit standardization of some items, in 1964 it required that "[i]tems of work expenses must be allowed when there is a determination that such expenses do, in fact, exist in the individual case." HEW, Handbook of Public Assistance Admnistration, Part IV, § 1340 (1964).

Congress thus sought to encourage AFDC recipients to secure and retain employment by requiring the States to take into account fully any expenses attributable to the earning of income in determining eligibility for assistance. Such expenses reduce the level of actually available income, and if not deducted from gross income will not produce a corresponding increase in AFDC assistance. Failing to allow the deduction of reasonable expenses might well discourage the applicant from seeking or retaining employment whereby such expenses are incurred. Section 402 (a)(7) was aimed at removing this disincentive. As then-Secretary of HEW Ribicoff explained the legislation in testimony before the Senate:

> "[W]e are trying to do . . . everything we can to encourage people to get a job and work and we feel it is important to encourage the States. By having this provision, the State will take into account these expenses so people will get jobs. I believe that the State should give them an allowance for those items that are necessary for them to get the job." Hearings on the Public Assistance Act of 1962 before the Senate Committee on Finance, 87th Cong., 2d Sess., 152 (1962).[12]

Standardized treatment of employment-related expenses without provision for demonstrating actual and reasonable expenses in excess of that standard amount,

---

[12] Our interpretation of § 402 (a)(7) is also supported by the disinclination of the Congress to amend the section to permit the use of various standardized allowances. See H. R. 16311, 91st Cong., 2d Sess., § 101 (1970); H. R. 1, 92d Cong., 1st Sess., § 401 (1971). In explaining the latter bill, which would have replaced the present work-expense provision with an increase in the earned income disregard of § 402 (a)(8)(A)(ii), the Committee on Ways and Means observed that it "would eliminate the open-ended work expense exclusion . . . ." H. R. Rep. No. 92–231, p. 177 (1971). See also S. 2311 and H. R. 3153, 93d Cong., 1st Sess. (1973).

such as Colorado has adopted, threatens to defeat the goal Congress sought to achieve in adopting the mandatory work-expense recognition provisions of § 402 (a)(7). By limiting employment expenses to $30 per month, the Colorado regulation results in a disincentive to seek or retain employment for all recipients whose reasonable work-related expenses exceed or would exceed that amount. Accordingly, the Colorado regulation conflicts with federal law and is therefore invalid.

It is, of course, not the adoption of a standardized work-expense allowance *per se* which we hold to be violative of § 402 (a)(7) of the Act, but the fact that the standard used by Colorado is in effect a maximum or absolute limitation upon the recognition of such expenses. As the Court of Appeals correctly observed, a standard allowance would be permissible, and would substantially serve petitioners' interests in administrative efficiency, if it provided for individualized consideration of expenses in excess of the standard amount. See 475 F. 2d, at 735. See also *Anderson* v. *Graham*, 492 F. 2d 986 (CA8 1973); *Adams* v. *Parham*, Civ. No. 16041 (ND Ga. Apr. 14, 1972) (unpublished); and *Campagnuolo* v. *White*, Civ. No. 13968 (Conn. June 22, 1972) (unpublished). Such a standard allowance would comport fully with the statutory requirement that any reasonable work expenses be considered, and would allow individualized treatment where necessary.[13]

---

[13] The Court's observation in *Rosado* v. *Wyman*, 397 U. S. 397, 419 (1970), that "[w]e do not, of course, hold that New York may not, consistently with the federal statutes, consolidate items on the basis of statistical averages," was in no sense intended as a blanket approval of the principle of averaging under AFDC programs without regard to what is being averaged. In that case, the Court found a New York statute fixing maximum AFDC allowances per family and eliminating a "special grants" program, to be in contravention of § 402 (a)(23) of the Act. In holding that New

As the Court has previously observed, the AFDC program is an area in which Congress at times "has voiced its wishes in muted strains and left it to the courts to discern the theme in the cacophony of political understanding." *Rosado* v. *Wyman,* 397 U. S., at 412. But as to reasonable expenses attributable to the earning of income, Congress has spoken with firmness and clarity.

The judgment is affirmed.

*It is so ordered.*

---

York could not completely eliminate such items from the standard of need, the Court noted that the State could, consistently with the statute, include them through the use of statistical averages. A statewide standard of need is, however, but an estimate by state welfare officials of the minimum financial requirements of a hypothetical family, and by its very nature is susceptible of computation through the use of statistical averages. Moreover, the discretion granted the States by Congress in determining need, see *King* v. *Smith,* 392 U. S. 309, 318 n. 14 (1968), contrasts sharply with the statutory requirement of § 402 (a) (7) that any expenses reasonably attributable to the earnings of income be considered. In the face of that statutory command and the clear statement of congressional purpose, we must also reject petitioners' claims of administrative efficiency or convenience. See *Rosado* v. *Wyman, supra,* at 417.

We also note that Colorado's use of a standard work-expense allowance is not justified by its undisputed power to set the level of benefits under the AFDC program. See *Rosado* v. *Wyman, supra; Jefferson* v. *Hackney,* 406 U. S. 535 (1972). Although Colorado may adjust the percentage of need which it has agreed to pay all recipients through its power to determine AFDC funding, see *King* v. *Smith, supra,* it may not do so in a manner that violates a specific requirement of the Act. See *Connecticut State Dept. of Pub. Welfare* v. *HEW,* 448 F. 2d 209 (CA2 1971).