**Lou Emma CHAMBLY et al., Plaintiffs,**

v.

**David R. FREEMAN et al., Defendants.**

**No. 79 4149 CV C.**

United States District Court,
W. D. Missouri, C. D.

Nov. 1, 1979.

Michael L. Lyons, Richard D. Chase, Legal Services of Eastern Mo., Inc., St. Charles, Mo., for plaintiffs.

William F. Arnet, Michael L. Boicourt, Asst. Attys. Gen., Jefferson City, Mo., for defendants.

## OPINION AND ORDER

ELMO B. HUNTER, District Judge.

### I.

This is an action in which plaintiffs [1] seek individually and on behalf of all other persons similarly situated declaratory and injunctive relief regarding defendants' practices of not deducting all reasonably attributable work related expenses [2] from the gross amount of earned income when determining the need for and the amount of welfare benefits under the Aid to Families with Dependent Children ("AFDC") program. Plaintiffs are alleging that defendants' policies are a violation of the Social Security Act, 42 U.S.C. § 602(a)(7), its implementing regulations, and the Due Process and Equal Protection Clauses of the United States Constitution.

The case was fully tried to the Court on August 17, and September 6, 7, 1979. This Court has subject matter jurisdiction over this action.

### II.

■ Plaintiffs moved on September 6, 1979, for an order of this Court to certify this cause as a class action pursuant to Fed.R.Civ.P. 23(a) & 23(b)(2). The defendants did not file any objection to the certification motion.

In reviewing the standards for class action determinations, this Court concludes that this case may be maintained as a class action.

The class of persons affected by this litigation is very large. The defendants indicated that their best approximation of the number of employed heads of AFDC households for July, 1979, was 10,217.[3] Joinder of a group of this magnitude is clearly impracticable.

Further, plaintiffs are all raising the same question of law; i. e., whether the state policies in determining the allowability of certain work-related expense deductions is in contravention of applicable federal laws and pertinent sections of the United States Constitution. Also, the claims or defenses of the representative parties meet the typicality requirement of Rule 23(a)(3). Lastly, the Court has not been shown any reason why the representative parties do not fairly and adequately represent the class of persons in question.

The plaintiffs have sought declaratory and injunctive relief in this action, and as such, seek a class determination under Rule 23(b)(2). Rule 23(b)(2) mandates that the defendant must be in a posture of refusing to act on grounds generally applicable to the class. It appears to the Court that defendants' challenged policies in the administration of Missouri's AFDC program adequately constitute the necessary refusal to act requirement of Rule 23(b)(2).

Therefore, the Court holds that this action may be maintained as a class action with the class defined as all employed Missouri citizens entitled to receive welfare benefits under the AFDC program.

### III.

■ The plaintiffs have alleged that defendants' policies with regard to the establishment of maximum standards for the deduction of work-related expenses violates 42 U.S.C. § 602(a)(7) and its implementing regulations, specifically 45 C.F.R. § 233.-20(a)(7)(i). Basically, the pertinent sections of these provisions are as follows:

> "A state plan for aid and services to needy families with children must . . (7) take into consideration . . . any expenses reasonably attributable to the earning of . . . income." 42 U.S.C. § 602(a)(7).

---

**1.** Named plaintiff Denise E. Williams moved to dismiss her complaint at trial and her motion was granted.

**2.** The plaintiffs have focused their challenge in this action upon defendants' work-related ex-

pense deduction policies for food, clothing and transportation. *See*, pp. 3 & 16 of plaintiffs' Post-Trial Brief.

**3.** *See*, Defendants' Answer to Plaintiffs' Interrogatory No. 1.

"Requirements for State Plans. A State Plan for . . . AFDC . . . must . . . (7) disregard of earned income. (i) Provide that the following method will be used for disregarding earned income: The applicable amounts of earned income to be disregarded will be deducted from the gross amount of 'earned income', and all work expenses, personal and non-personal, will then be deducted." 45 C.F.R. § 233.20(a)(7)(i).

The section of Missouri's AFDC Manual[4] drawn into question by this litigation is Chapter I, Section III, (f)(5).[5]

## IV.

*Lou Emma Chambly*

Plaintiff Chambly is employed by the St. Louis Public Library as a Public Service Assistant. Her gross salary is $795.00 per month. In addition, Ms. Chambly receives an AFDC grant of $188.00 per month for herself and her minor children. She also receives food stamps.

Ms. Chambly testified that she eats her lunch each working day at Jerry's Restaurant which is across the street from the downtown St. Louis Public Library facility. She further testified that she carefully maintains records of her luncheon expenditures. Her testimony indicated that her daily lunch expenses exceeded $.60 per day. On cross-examination, Ms. Chambly stated that there is no prohibition at the St. Louis Public Library against "brown bagging." Ms. Chambly testified that she prefers to eat lunch at Jerry's Restaurant.

The St. Louis Public Library maintains a dress code for their employees. In order to comply with the dress code requirements, Ms. Chambly testified that she purchases office-type clothing that she otherwise would not purchase. She stated that she wears "cut-offs and T-shirts" while at home and "disco" clothes when going out in the evenings. According to her testimony, neither of these two clothing styles would be appropriate for her place of employment. Also, she testified that she does not wear her "work" clothes at times other than when she is at work or enroute to work. She spends approximately $30.00 a month for clothing related to her employment. Ms. Chambly acknowledged that nothing would prevent her from wearing her work clothes to functions other than her employment.

*Chris Schoue*

Plaintiff Schoue resides in Columbia, Missouri. She lives with her 5 year old child. Her employment as a secretary is with MFA Insurance Co., and her gross pay is $230.00 every two weeks. She works 8 a. m. to 5 p. m. Mondays through Fridays and receives 8–10 hours of overtime work each month. Since July, 1979, she is receiving $43.00 per month through AFDC. She receives no food stamps.[6]

4. Missouri's AFDC Manual is composed of the State's operating procedures for the AFDC program.

5. In relevant part, this section allows for an AFDC claimant to deduct "actual personal work related expenses" in excess of the "personal standard" which is a standard deduction of $30.00 allowed for monthly work-related expenses like "clothing (such as uniforms and special shoes, etc.), transportation, lunches, union dues, mandatory retirement, etc." If the applicant elects to claim actual expenses, then the applicant must fill out Form IM–2C which categorizes the claimed expenditures. The regulation is facially clear that only clothing expenditures for uniforms and special shoes can be claimed. Further, transportation expenses are allowed at a maximum rate of 15 cents per mile if the applicant uses a private automobile to travel to and from work. Meal expenses incurred because of employment are limited to a standard 60 cent deduction. If these expenditures exceed the "personal standard" deduction of $30.00, then the difference between the $30.00 figure and what is actually spent is allowed (subject to the previously indicated limitations).

The regulation also requires that the caseworker seek verification of the claimed expenses where "practical to do so" and in all cases the expenses must be explained. Further, if the claimed expenses do not seem reasonable in the caseworker's judgment, then "verification must be provided."

6. The Court notes the devastating effect of the high rate of inflation upon persons engaged in minimum wage occupations. It is an unfortunate situation when a person like Ms. Schoue who works well in excess of 50 hours each

Ms. Schoue testified that she commutes 23 miles round-trip each day to her job. On cross-examination, she indicated mileage of 530 miles for July, 1979 with 43 miles for nonwork-related travel. Ms. Schoue owns a 1968 Pontiac LeMans automobile that she testified operates for 9–10 miles on a gallon of gasoline. In the six months prior to July, 1979, Ms. Schoue testified that she has spent $650.00 in repairs on the automobile. She stated that if it was not for her job, she would sell the automobile.[7]

Meal expenses for Ms. Schoue amount to $1.50 per working day. She testified that she eats at Hardee's Hamburger Restaurant, although there is no prohibition against employees bringing their lunch to MFA Insurance Co.

In regards to her work clothing, Ms. Schoue stated that she had been told of a dress requirement when she began her employment at MFA Insurance Co. Basically, she testified that she can dress "casually, but neat." In conjunction with this requirement, Ms. Schoue said she bought many items to wear to work, and that she never wears these "work clothes" for other purposes.

*Georgia Ann Loeffel*

Plaintiff Loeffel resides in Fenton, Missouri, and is employed by St. Luke's Hospital West in St. Louis County, Missouri. She works as a lab assistant Mondays through Fridays from 8:30 a. m. to 4:30 p. m. She has one child aged 9 years. She testified that her take-home pay is approximately $260.00 every two weeks. She stated that her application for AFDC benefits was denied and that she receives no food stamps. Ms. Loeffel's testimony revealed that she drives 34 miles round-trip each day from

her mobile home to her employment. She drives a 1977 Ford Pinto automobile. She stated that her costs of operation for the automobile are quite high due to a $738.00 per year high risk insurance premium that she must pay.

St. Luke's Hospital does not require uniforms for persons in Ms. Loeffel's position. Hence, Ms. Loeffel testified that she must purchase pants and blouses for her employment. She stated that 10% of the utilization of these clothes is for nonwork-related purposes.

### V.

The state of Missouri voluntarily participates in the AFDC program.[8] As such, the state is bound to adhere to federal law governing the operation of the program. *See, Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); and *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

The substantive provisions of 42 U.S.C. § 602(a)(7) of the Social Security Act were closely scrutinized by the Supreme Court in *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974). There, the Court held invalid a Colorado regulation that established a uniform allowance for work-related expenses taken as a whole. The facts in *Shea* differ from the facts before this Court to the extent that the infirm Colorado regulation did not permit any itemization for categories of work-related expenses. Nevertheless, the basic thrust of the challenge in *Shea* was directed against a standard allowance that did not permit AFDC applicants to demonstrate higher expenses,[9] which is essentially analogous to the situation in this action. Here,

---

week can not earn enough to support herself and her one child without financial assistance in the form of public welfare.

**7.** Ms. Schoue's testimony indicated that public transportation is not available in Columbia, Missouri, from her home to her employment.

**8.** *See,* Stipulation, filed August 17, 1979.

**9.** The Supreme Court in an unanimous opinion construed the issue in *Shea* as follows:

"We granted certiorari . . . to determine whether, in light of [§ 602(a)(7)], a State may adopt a standardized allowance for expenses attributable to the earning of income which does not allow an applicant to deduct expenses that exceed the standard. We hold that it may not." 416 U.S. 251 at 252, 94 S.Ct. 1746 at 1749–1750, 40 L.Ed.2d 120.

Missouri allows for itemization of work related expenses,[10] but has established absolute limitations on the amounts of the expense deductions in some categories, namely food, clothing and transportation.[11]

The defendants argued that the issue in this case in light of *Shea* is whether the standardized maximum allowances in each itemized category are reasonable.[12] This Court can not agree with the defendant's characterization of *Shea*. The import of the holding in *Shea* is that a standard allowance is permissible, but the standardized figure can not serve as a maximum limitation on the amount of expenses an individual AFDC applicant may be able to show. The defendants are not violating § 602(a)(7)

by utilizing standard work expense deduction figures. Rather, defendants are violating the mandates of the statute by not allowing AFDC applicants an opportunity to prove that they have reasonable expenses in excess of the standardized maximums. *Shea v. Vialpando, supra* ; *See also, Anderson v. Graham*, 492 F.2d 986 (8th Cir. 1973); *Perez v. Chang*, 438 F.Supp. 238 (D.Haw. 1977); *Fones v. Percy*, No. 78–C–191 (W.D. Wis.1978), *aff'd.*, 601 F.2d 600 (7th Cir. 1979).[13]

While the defendants' evidence tended to show the reasonableness of the standard deductions in other contexts,[14] such evidence simply is not relevant to an interpretation of the requirements of § 602(a)(7).[15]

**10.** For example, the Missouri AFDC Manual, Chapter I, Section III, (f)(1–4), indicates that alimony and child support payments, wage garnishments, city earnings taxes, and child care costs are all completely deductible.

**11.** With regard to clothing expenses, the limitation is an absolute prohibition, except for uniforms or special shoes expenses which are allowed at their actual costs.

**12.** To support their reading of *Shea,* the defendants point to the following language in the opinion:

"By its terms, [§ 602(a)(7)] requires the consideration of 'any' reasonable work expenses in determining eligibility for AFDC assistance. In light of the evolution of the statute and the normal meaning of the term 'any', we read this language as a congressional directive that no limitation, apart from that of reasonableness, may be placed upon the recognition of expenses attributable to the earning of income. Accordingly, a fixed work-expense allowance which does not permit deductions for expenses in excess of that standard is directly contrary to the language of the statute.

Standardized treatment of employment-related expenses without provision for demonstrating actual and reasonable expenses in excess of that standard amount, such as Colorado has adopted, threatens to defeat the goal Congress sought to achieve in adopting the mandatory work-expense recognition provisions of [§ 602(a)(7)]. By limiting employment expenses to $30 per month, the Colorado regulation results in a disincentive to seek or retain employment for all recipients whose reasonable work-related expenses exceed or would exceed that amount. Accordingly, the Colorado regulation conflicts with federal law and is therefore invalid.

It is, of course, not the adoption of a standardized work-expense allowance per se which we hold to be violative of [§ 602(a)(7)] of the Act, but the fact that the standard used by Colorado is in effect a maximum or absolute limitation upon the recognition of such expenses. As the Court of Appeals correctly observed, a standard allowance would be permissible, and would substantially serve petitioners' interests in administrative efficiency, if it provided for individualized consideration of expenses in excess of the standard amount [citations]. Such a standard allowance would comport fully with the statutory requirement that any reasonable work expenses be considered, and would allow individualized treatment where necessary." 416 U.S. 251 at 260, 264 & 265, 94 S.Ct. 1746 at 1755–1756, 40 L.Ed.2d 120.

**13.** Mr. Bert Lanius of the Kansas City Office of the Department of Health, Education and Welfare ["HEW"] testified that HEW had approved of the Missouri AFDC plan in 1976. In *Shea*, the Supreme Court declined to grant any deference to administrative practice in view of the clarity of the statutory requirements in § 602(a)(7), 416 U.S. 251 at 262, 263 n. 11, 94 S.Ct. 1746, 40 L.Ed.2d 120.

**14.** Mr. Gerald Yarrington, a representative of the Division of Accounting for the state of Missouri testified that state employees are paid 17 cents per mile for use of their personal automobiles when engaged in official business. Also, defendants noted in their Post-Trial Brief that the Internal Revenue regulations allow 17 cents per mile as a deduction for business related travel.

**15.** *See,* Judge Doyle's opinion in *Fones v. Percy*, No. 78–C–191 (W.D.Wis.1978), *aff'd.*, 601 F.2d 600 (7th Cir. 1979).

This Court notes that efficient management of governmental services requires statistical averages in many situations. But, the Supreme Court in *Shea* made clear that the intent of Congress in passing § 602(a)(7) was to insure *individualized* treatment for needy citizens. 416 U.S. 251 at 261, 94 S.Ct. 1746, 40 L.Ed.2d 120.

Indeed, much of the defendants' argument is to the effect that allowing AFDC applicants to show their true work-related expenses would create tremendous difficulties in terms of administrative efficiency.[16] Mr. John Zumwalt, Director of the Missouri Division of Family Services, testified that adopting a "case by case" verification procedure would be "unworkable". This argument seems to lack merit in light of defendants' regulation that currently *requires* verification of work-related expenses when the claimed expenses do not seem reasonable to the caseworker. *See,* Missouri AFDC Manual, Chapter I, Section III, (f)(5).

The determination of eligibility given the nature of the AFDC program is necessarily a case by case process. In that the defendants are not barred under *Shea* from utilizing standardized work expense deductions for those applicants who choose not to attempt to show expenses in excess of the standard amounts, the additional burden of allowing that class of applicants who choose to demonstrate to the satisfaction of defendants that their expenses are higher does not seem appreciably greater than the verification procedures already in effect.

Whatever the merits of the defendants' administrative convenience arguments, the Supreme Court in *Shea* indicated that the clear expression of congressional intent requiring consideration of any expenses reasonably attributable to the earning of income necessitates rejection of any state claim of administrative convenience. 416 U.S. 251 at 265 n. 13, 94 S.Ct. 1746, 40 L.Ed.2d 120.

## VI.

This Court finds it unnecessary to reach the constitutional claims of plaintiffs given that the statutory grounds here are dispositive. *See, Shea v. Vialpando, supra,* and *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

## ORDER

Upon careful consideration of the issues presented in this action, it is hereby

ORDERED that a judgment be issued declaring that defendants have violated 42 U.S.C. § 602(a)(7) and its implementing regulations insofar as defendants have established absolute standardized deductions which do not permit individual offers of proof for food, clothing and transportation expenses which may exceed the standardized amounts and are reasonably attributable to the production of earned income by AFDC applicants and recipients. It is further

ORDERED that the defendants are hereby enjoined from violating 42 U.S.C. § 602(a)(7) by enforcing those portions of Missouri Division of Family Services' Manual, Chapter I, Section III, (f)(5), insofar as the regulations establish absolute standardized deductions which do not permit individual offers of proof for food, clothing and transportation expenses which may exceed the standardized amounts and are reasonably attributable to the production of earned income by AFDC applicants and recipients.

IT IS SO ORDERED.

---

16. Mr. Lanius testified that Missouri's "error rate" in administering its AFDC program was 10%. In his opinion, the adoption of a receipt verification system would cause an increase in the error rate by 3% which could lead to a penalty reduction in federal financial participation in Missouri's program.