**Steven DALE and Mary Ann Dale**

v.

**STATE OF VERMONT, James P. O'Rourke, Commissioner of Social Welfare, and Margaret Heckler, Secretary of Health and Human Services.**

Civ. A. No. 82–252.

United States District Court, D. Vermont.

Jan. 9, 1986.

Steven Dale, pro se.

Jeffrey L. Amestoy, State Atty. Gen., Montpelier, Vt., Michael McShane, Asst. Atty. Gen., Waterbury, Vt., for State of Vt., and Com'r of the Vermont Dept. of Social Welfare.

George W.F. Cook, U.S. Atty., Rutland, Vt., Robert F. O'Neill, Asst. U.S. Atty., Burlington, Vt., for Margaret Heckler, Secretary of Health & Human Services.

## MEMORANDUM OF DECISION

HOLDEN, Senior District Judge.

The plaintiffs bring this action *pro se* against the defendants seeking a declaratory judgment that the formula used by the State of Vermont to determine the level of benefits in the Aid to Needy Families with Children ("ANFC") program is invalid. The plaintiffs also seek $25,000 in compensatory damages from the State for wrongful temporary termination of plaintiffs' ANFC benefits in July, 1982, together with costs, attorneys' fees and retroactive benefits.[1]

The Secretary of Health and Human Services moved to dismiss the complaint. In the alternative, she asks that summary judgment be entered in her favor. The State of Vermont and the defendant O'Rourke, its Commissioner of Social Welfare, have also moved for summary judgment. The plaintiffs request that judgment by default be entered in their favor.

---

1. The complaint was originally filed *pro se* in June of 1982. On March 30, 1984 an attorney entered his appearance on behalf of the plaintiffs. On August 1, 1985 the court granted the plaintiffs' attorney's motion to withdraw.

In accordance with this court's order of referral pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the magistrate entertained oral and written arguments on the several motions and issued a report and recommendation to the court.

The magistrate recommended the plaintiffs' motion for default judgment be denied; that the complaint against the federal defendant be dismissed; and that the state defendants' motion for summary judgment be granted. The plaintiffs filed timely objection to all three recommendations. For the reasons which follow, the court concludes the recommendations of the magistrate must be adopted.

The plaintiffs' motion for default hinges on the defendants' failure to respond within the time limits set by the Federal Rules of Civil Procedure and by the magistrate to various papers filed by the plaintiffs. An entry of default under Fed.R.Civ.P. 55(a) is proper only:

> [w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise....

Rule 55(e) provides:

> Judgment Against the United States. No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.

The plaintiffs have not met this requirement.

■ The entry of default as to the remaining defendants is discretionary with the court. In exercising its discretion the court is mindful that judgments by default are not favored unless the defendants have flagrantly violated the federal rules. Wright, *Federal Courts* (4th Ed.) § 98, pp. 660–661. While some of the defendants' responses to the complaint as amended and to the interrogatories have been somewhat belated, there is no indication of intention not to defend. Prejudice to the plaintiffs or to the judicial process has not been shown. The motion for entry of default must be denied.

Turning to the merits of the plaintiffs' complaint, it is contended that the formula used by Vermont to determine the amount of ANFC benefits violates the federal legislation that created the program, the regulations which implement the program and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The magistrate recommended dismissal of the complaint against the federal defendant, the Secretary of Health and Human Services, for lack of a justiciable controversy.

Since the underpinning of the plaintiffs' claims against the Secretary is predicated on the complaint against her counterpart in the State government, it is appropriate to consider that aspect of the complaint first. In essence, the complaint charges the formula used by the State of Vermont and the administration of the State plan for the ANFC program, violate the federal statute and its implementing regulations and offend the Equal Protection Clause of the United States Constitution. The State of Vermont and Commissioner O'Rourke have advanced motions for summary judgment. Both contend the Vermont ANFC program complies with the federal statute, regulations promulgated thereunder, and does not violate the federal constitution.

■ The ANFC program is administered by the Vermont Agency of Human Services through its Department of Social Welfare pursuant to 33 V.S.A. § 2504. As the magistrate reported, the State of Vermont received federal financial participation based on an approved State plan. To determine whether a family is entitled to benefits, the State must calculate on a state-wide basis the standard of financial need. The amount of the grant is determined by comparing the standard of need to the family's net income. *See* 42 U.S.C. § 602, 45 C.F.R. § 233.20. Thus, as the magistrate reported, if the net income is less than the standard of need, and other resources available to the family do not exceed applicable resource limits, the family entitlement to

ANFC is established. *See Philbrook v. Glodgett*, 421 U.S. 707, 715, 95 S.Ct. 1893, 1899, 44 L.Ed.2d 525 (1975).

Vermont is unable to pay all recipients the full difference between net income and the state-evaluated standard of need. As of July 1, 1984 family grants were limited to 65.5 percent of the recipient's total need requirements. After computing the reduced standard of need ("the precomputed payment standard"), the state subtracts any nonexempt income of the recipient in order to arrive at the amount of benefits to be paid.[2]

The plaintiffs urge that use of this formula which does not result in payment equal to the state standard of need violates the intent and spirit of the federal legislation and regulations. The "AFDC" program set forth in Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.*, as amended, is a cooperative effort between federal and state governments. States are not required to participate in the program, but those states which do and whose ANFC plans are approved by the Secretary of Health and Human Services, are eligible for federal financial participation in the program. *See* 42 U.S.C. § 603. The statutory design of the program is stated in the Act:

> For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents and relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is here-

by authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for aid and services to needy families with children. 42 U.S.C. § 601.

The federal statute does not dictate the content or level of the state standard of need. Nor is there any statutory requirement that the state pay the full amount of the standard of need. The implementing regulations explicitly permit states to use ratable reductions of their precomputed need standards and pay only a portion of unmet need. 45 C.F.R. § 233.20(a)(2)(ii), (a)(3)(viii).

In administering the Federal Aid for Dependent Children (AFDC) program,

> a State may, after recomputing its standard of need, pare down payments to accommodate budgetary realities by reducing the percent of benefits paid or switching to a percent reduction system, but it may not obscure the *actual* standard of need. (Emphasis in the opinion.)

*Rosado v. Wyman*, 397 U.S. 397, 413, 90 S.Ct. 1207, 1218, 25 L.Ed.2d 442 (1970) (Harlan, J.).

More recently, in *Heckler v. Turner*, —— U.S. ——, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985) the Court by Justice Blackmun took pains to reaffirm that states need not pay the entire difference between the family's net income and the pre-determined standard of need, but "may establish a dollar maxima or provide only a specified percentage of the family's need." —— U.S. at ——, 105 S.Ct. at 1142, n. 3. The Vermont plan, and its administration, appear to be consistent with these precepts.

Against the report and recommendation of the magistrate, the plaintiffs maintain that their nonexempt income should not be

---

**2.** To illustrate, assume that a family's standard need totals $1,000 and the family has net income of $500. Under Vermont's system, the level of benefits would be determined as follows:

| | |
|---|---|
| $1,000 | Standard of Need |
| × 65.5 | Ratable Reduction |
| $ 655 | Reduced Need Standard |
| − 500 | Net Income |
| $ 155 | ANFC Benefit |

deducted from the precomputed payment standard until the total of their income and ANFC grant reach 100% of the state-determined standard of need. Otherwise, they assert, the statute creates a disincentive to work. The federal regulation permits nonexempt income to be deducted from a reduced payment standard in computing the amount of benefits to be paid. 45 C.F.R. § 233.20(a)(3)(ii)(B). The Supreme Court sustained this deduction as consistent with the federal welfare statute and the Constitution in *Jefferson v. Hackney*, 406 U.S. 535, 549, 92 S.Ct. 1724, 1733, 32 L.Ed.2d 285 (1971). Nor was the Congress insensitive to the need to create a work incentive; the federal statute exempts a certain portion of earned income from the definition of nonexempt income. *See* 42 U.S.C. § 602(a)(8).

■ Lastly, the plaintiffs contend that the Vermont percentage reduction system violates the Equal Protection Clause of the Fourteenth Amendment. The state's system for administering its ANFC program must be upheld if it is "rationally based and free from invidious discrimination." *Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). Vermont provides 65.5 percent of the full standard of need to ANFC recipients. The plaintiffs do not question the explanation provided by the state in its policy manual to the effect that "funding is insufficient to meet 100 percent of the need standard." In *Jefferson v. Hackney, supra,* the Court held that percentage reductions similar to those challenged here are rationally related to budgetary constraints and thus constitutional. 406 U.S. at 549, 92 S.Ct. at 1733. Applying the established standard in the light of *Jefferson,* the court concludes that Vermont's classification is "rationally based and free from invidious discrimination."

■ In the hearing before the magistrate the plaintiffs challenged the Welfare department's computation of benefits, contending that in subtracting outside income from the reduced standard of need, no allowance was made for expenses incurred in producing that income as required by Section 402(a)(7) of the Social Security Act. Magistrate Niedermeier searched these questions by requiring the defendants to exhibit the relevant provisions of the Social Welfare Policy Manual detailing the means and method of calculating plaintiffs' benefits with adjustments for income expense and disregards. After reviewing the defendants' submission the magistrate concluded the plaintiffs' entitlement was properly computed.

In objecting to this determination, the plaintiffs refer to an earlier administrative proceeding involving the State of Vermont and its Work Incentive Program ("WIN") in which Steven H. Dale was a registrant.

It appears in the record from a document submitted by defendants that in May of 1982 a National Review Panel of the Department of Labor reversed a ruling by the Vermont Department of Employment and Training that imposed sanctions upon Steven Dale for failure to participate in the WIN program. Dale had refused to participate in WIN activities in Rutland because he was required to seek work in Rutland for $4.78 per hour. He claimed his travel expenses from Sudbury to Rutland were so great that he would have to earn at least $6.00 per hour in Rutland in order to meet or exceed his current ANFC grant. Dale appealed the Review Panel's decision. The decision of the Review Panel, through its administrative law judge, reversed the decision of the State agency to conclude that the plaintiff's unusual transportation costs were "employment-related [sic] expenses within the meaning of 29 C.F.R. § 56.-34(b)(3)." *In the Matter of Steven H. Dale,* Case No. 82–WIN–613 at 4.

Plaintiffs now urge the court to hold that this decision controls the Department of Social Welfare ("DSW") in its calculation of their ANFC grant. The Department of Labor's decision clearly applies only to transportation costs to and from work under the WIN programs. In the proceedings within the Department of Labor, the ALJ interpreted 29 C.F.R. § 56.34(b)(3) governing WIN work and training criteria.

The regulation concerned acceptable employment and work-related expenses "in determining the wage rate for appropriate work under the WIN program." The federal administrative ruling did not involve the statute or regulations pertaining to the amount of the Dale family's benefits under the AFDC program.[3]

Prior to 1981, 42 U.S.C. § 602(a)(7) required the state, in determining need, to take into consideration "any expenses reasonably attributable" to the earning of income. In 1981 the Congress amended the statute to delete the requirement of consideration of expenses reasonably attributable to earnings. Nor do the regulations impose such a requirement. The Vermont ANFC regulations set a standard employment expense deduction in the amount of seventy-five dollars per month per individual in the assistance group. *See* Sections 2253.11(B) and 2253.12(B).

The plaintiffs rely on *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1973) for the proposition that a standard deduction of expense is improper. The court in *Shea* specifically held "[b]y its terms § 402(a)(7) [42 U.S.C. § 602(a)(7) ] requires consideration of 'any' reasonable work expenses in determining eligibility for AFDC assistance." 416 at 260, 94 S.Ct. at 1753. This holding was prior to the recent amendment in the Omnibus Budget Reconciliation Act of 1981 (OBRA).

The legislative history of the recent enactment and its force and effect is extensively and plainly explained in *Heckler v. Turner, supra:*

> In 1981, by OBRA, Congress again significantly altered the treatment of work expenses. As noted above, in place of the requirement of § 402(a)(7) that the State consider expenses "reasonably attributable" to the earning of income, Congress substituted in § 402(a)(8) a child-care disregard of up to $160, and a flat $75 disregard, "in lieu of itemized work expenses." S.Rep. No. 97-139, p.

435 (1981). In addition, Congress restricted the "$30 plus one third" disregard to the first four months of a recipient's employment, § 402(a)(8)(B)(ii)-(II), 42 U.S.C. § 602(a)(8)(B)(ii)(II), and reduced its impact by requiring that the calculation be made after the work-expense and child-care disregards had been subtracted, § 402(a)(8)(B)(iv), 42 U.S.C. § 602(a)(8)(B)(iv).

—— U.S. at ——, 105 S.Ct. at 1142–45. In this light the plaintiffs' attack on the standard deduction cannot be sustained under the provisions of the Act as amended. The defendants' calculation of the plaintiffs' net income was legally correct under the prevailing federal law.

■ The plaintiffs' claim against the State of Vermont and its Commissioner of Social Welfare seeks compensatory damages resulting from the termination of the ANFC benefits. The magistrate's report and recommendation is that the monetary award, which the plaintiffs seek to recover in this action, is precluded by the Eleventh Amendment to the United States Constitution. This conclusion is supported by the facts shown in the record submitted for review and sound in law. This segment of the report and recommendation is appended as Appendix A.

For the reasons written above, the objections of the plaintiffs to the report and recommendation of the magistrate concerning disposition of their claims against the State defendants cannot be sustained.

There remains the plaintiffs' objection to the report and recommendation concerning the federal claims against the Secretary of Health and Human Services. As noted earlier in the opinion, the complaint against the Secretary is principally founded on her approval of the State's plan for administration of the federal AFDC program. Since the State plan is validly designed and administered according to the Social Security Act as amended, the complaint against the Secretary fails to state a claim upon which

---

**3.** The plaintiffs suggest that the DSW representative, who is a full-time employee in the WIN office, "conspired" with the Department of Employment and Training to cause harm to them. This allegation has no legal relevance to the issues at bar.

declaratory or compensatory relief may be granted.

Accordingly, the report of the magistrate is accepted. The recommendation that the complaint against the defendant Secretary of Health and Human Services be dismissed is adopted. The recommendation that the motion of the remaining state defendants for summary judgment be granted is adopted. The Clerk is directed to enter an order dismissing the plaintiffs' complaint against the defendant Secretary. Summary judgment will be entered for the defendants State of Vermont and James P. O'Rourke, Commissioner of Social Welfare.

It is SO ORDERED.

### APPENDIX A

Excerpt from Magistrates' Report and Recommendation

\*    \*    \*    \*    \*    \*

Plaintiffs' final claim against the state defendants seeks money damages for the alleged negligent termination of plaintiffs' ANFC benefits in July 1982. This claim for money damages cannot be maintained against either the State or the Commissioner of the Vermont Department of Social Welfare by reason of the Eleventh Amendment doctrine of state sovereign immunity. The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has extended the Amendment to bar suits against a state by its own citizens as well as by citizens of another state. *Hans v. Louisiana,* 134 U.S. 1 [10 S.Ct. 504, 33 L.Ed. 842] (1890). Thus the claim for money damages against the State of Vermont is clearly barred by sovereign immunity. The landmark decision of *Ex Parte Young,* 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908), which established that the Eleventh Amendment does not prevent federal courts from issuing injunctions ordering prospective relief

against the state, does not change the result. In *Edelman v. Jordan,* 415 U.S. 651, 655 [94 S.Ct. 1347, 1351–52, 39 L.Ed.2d 662] (1974) the Supreme Court held that *Young* does not allow for actions, retroactive in nature, seeking monetary damages against the state. The relief sought in the instant case is clearly retroactive in nature as it seeks compensation for a negligent termination in benefits for July 1982.

Likewise the claim against the Commissioner of the Vermont Department of Social Welfare is barred by the Eleventh Amendment. The complaint clearly establishes that the damages sought against the Commissioner are for acts carried out within the scope of the governmental function of the Vermont Department of Social Welfare, i.e. in his official capacity. When the action is in essence one for the recovery of money from the state, the state is the real party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. *Pennhurst State School and Hospital v. Halderman,* [465] U.S. [89], 104 S.Ct. 900 [79 L.Ed.2d 67] (1983); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464 [65 S.Ct. 347, 350–51, 89 L.Ed. 389] (1945).

Finally it cannot be said that either the State of Vermont or the Commissioner of the Vermont Department of Social Welfare waived its Eleventh Amendment immunity and consented to plaintiffs' suit by participating in the federal Aid to Families with Dependent Children (AFDC) program. The mere fact that a state participates in a program through which the Federal Government provides assistance for the operation by the state of a system of public aid is not sufficient to establish consent on the part of the state to be sued in the federal courts. *Edelman v. Jordan,* 415 U.S. at 673 [94 S.Ct. at 1360–61]. A waiver of sovereign immunity must be made by express language or by "such overwhelming implications" that there is "no room for any other reasonable construction." *Id., quoting Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171 [29 S.Ct. 458, 464, 53

L.Ed. 742] (1909). No such waiver, either express or implied, was ever made in the instant case by the State of Vermont or the Commissioner of the Department of Social Welfare.