In the Matter of the Application of Marian KELLY on Behalf of her minor child John LOFSTOCK, Plaintiffs,

Carmelina Buchanan, on behalf of her two minor children and on behalf of all others similarly situated, Intervenor-Plaintiff,

v.

Cesar PERALES, as Commissioner of the New York State Department of Social Services; Noah Weinberg, as Commissioner of the Rockland County Department of Social Services; Joseph D'Elia, as Commissioner of the Nassau County Department of Social Services; Margaret Heckler, as Secretary of Health and Human Services, Defendants.

No. 82 Civ. 8513(MEL).

United States District Court, S.D. New York.

June 29, 1983.

Arthur J. Fried, The Legal Aid Soc., New York City, Rene H. Reixach, June Castellano, Greater Upstate Law Project, Rochester, N.Y., for intervenor-plaintiff; Leonard Clark, Hempstead, N.Y., Vicki Lens, Huntington, N.Y., Nassau/Suffolk Law Services Committee, of counsel.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendant Cesar Perales; Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Maryellen Weinberg, Joseph F. Wagner, Asst. Attys. Gen., New York City, of counsel.

Edward G. McCabe, County Atty. of Nassau County, Mineola, N.Y., for defendant Joseph D'Elia; Bruce J. Adams, Deputy County Atty., Mineola, N.Y., of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant Margaret M. Heckler; Twila L. Perry, Asst. U.S. Atty., New York City, Annette H. Blum, Regional Atty., Holly A. Clarke, Asst. Regional Atty., Dept. of Health and Human Services, Washington, D.C., of counsel.

LASKER, District Judge.

## I. *Introduction*

Carmelina Buchanan, on behalf of her two minor children and all others similarly situated, challenges the legality of New York State's method of determining the amount of income deemed available for meeting the needs of a family receiving federal Aid to Families with Dependent Children ("AFDC") benefits, for families in which the household includes an employed stepparent. The challenged method of computation was adopted by New York in response to amendments to the AFDC program enacted by Congress in the Omnibus Budget Reconciliation Act of 1981 ("OBRA"), §§ 2301–21, Pub.L. No. 97–35, 95 Stat. 357, 843–60.

Under the AFDC program, which is administered under Title IV, Part A of the Social Security Act, 49 Stat. 627 (1935) (codified as amended at 42 U.S.C. §§ 601–76), states receiving AFDC funds must adopt a plan for administering their programs which complies with the provisions of the Act and the regulations promulgated by the United States Department of Health and Human Services ("HHS"). Since 1939, when Section 402(a)(7) was added to the Act, the Act has required that state agencies, in determining a family's level of need, take into account any non-AFDC income and resources available to the family. *See* Social Security Amendments Act of 1939, Pub.L. No. 76–379, § 401(b), 53 Stat. 1360, 1379–80.

Before OBRA was enacted, amounts withheld from an individual's paycheck as mandatory payroll deductions (such as income taxes and FICA taxes) were not included in the amount deemed available for the family's support, nor were amounts spent on job-related expenses such as transportation, child care, uniforms, and the like. Section 402(a)(7) of the Act, 42 U.S.C. 602(a)(7), provided prior to OBRA that:

"(7) except as may be otherwise provided in clause (8), [a state plan must] provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children ... as well as any expenses reasonably attributable to the earning of any such income."

Section 402(a)(8) of the Act, 42 U.S.C. § 602(a)(8), provided for various "disregards"—that is, amounts not to be considered in computing available income. The Act did not then, nor does it now, define "income" as used in Section 402(a)(7).

OBRA amended Section 402(a)(7) of the Act to provide that:

"(7) except as may be otherwise provided in paragraph (8) or (31) and section 615 of this title [a state plan must] provide that the State agency—

(A) shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children ..."

Section 402(a)(8) of the Act was also amended to provide, *inter alia,* for a disregard of "the first $75 of the total of [an individual's] earned income" for the month. In addition, a provision governing the treatment of stepparents' income was added, which provides that the first $75 of the stepparent's monthly income is also to be disregarded, as well as any amounts paid by the stepparent to support dependents other than those covered by AFDC benefits, such as alimony and child support payments.

Following the enactment of OBRA, the State of New York, in accordance with HHS's interpretation of the amendments to the AFDC program, modified its calculation of AFDC benefits so as to deduct the new $75 disregard from gross income—that is, income without reduction by mandatory payroll deductions for federal, state and local taxes. *See* Exs. A & B to Pl. Ex. F.[1]

Thus, whereas prior to OBRA the actual expenses of a family for payment of mandatory payroll deductions and for job-related expenses were deducted from the income considered available to meet the needs of an AFDC household, the provisions enacted in OBRA were interpreted by the State to replace those deductions with a flat $75 disregard to cover tax withholdings and all job-related expenses.

On February 9, 1982, Judge Ward of this Court preliminarily enjoined the New York State and City Departments of Social Services from implementing this proposed method of calculating the income available to an AFDC family. *See RAM v. Blum,* 533 F.Supp. 933 (S.D.N.Y.1982). Judge Ward concluded, in light of the legislative and administrative history of Sections 402(a)(7) and (a)(8) of the Act, that the term "income" as used in Section 402(a)(7) refers to income net of mandatory payroll deductions, and therefore that mandatory payroll deductions are to be subtracted from recipients' income *before* the disregards set forth in Section 402(a)(8) (including the new $75 disregard) are subtracted. Judge Ward granted a permanent injunction to the same effect on May 17, 1983. *RAM v. Blum,* 564 F.Supp. 634 (S.D.N.Y.1983).

The class that was certified in the *RAM* litigation consisted of "all individuals who live in New York State who have earned income under Section 402(a)(8) of the Social Security Act (42 U.S.C. 602[a][8]), as amended by the Omnibus Budget Reconciliation Act of 1981, P.L. 97–35, 95 Stat. 843 (§ 2301), and apply for and/or receive Aid to Families with Dependent Children from and after December 15, 1981." Order of February 25, 1982 (Def.Ex. C). The class did not include AFDC households in which a stepparent has income that must be considered in determining the AFDC grant, since the calculations applicable to a stepparent's income are set forth in Section

---

1. Plaintiff submitted to this Court, among other documents, copies of the memoranda and exhibits submitted to Judge Ward in the *RAM v. Blum* litigation (discussed *infra*). Thus, "Pl.Ex. F" consists of exhibits submitted in support of the motion for preliminary injunction in *RAM,* each of which is cited by a separate letter (A through K). References to plaintiff's exhibits will follow this form throughout the opinion.

402(a)(31) of the Act rather than in Section 402(a)(8).

The instant case has been brought on behalf of a proposed class of "all New York households with employed stepparents who apply for or receive AFDC benefits, or who have been denied or received benefits since January 1, 1982." (Memorandum of Law in Support of Plaintiff-Intervenor's Motion for Preliminary Injunction and Class Certification, at 16).[2] According to documents submitted by plaintiff,[3] there are approximately 6,630 stepparent households in New York State, of which approximately 67%, or 4,420 households, have been or will be affected by the changes implemented pursuant to OBRA (Affidavit of June M. Castellano, counsel to plaintiff-intervenor, at ¶¶ 3–5; see Exs. 1 & 2 to Affidavit). Plaintiff moves for class certification and a preliminary injunction requiring that the calculation of AFDC grants for households with an employed stepparent be based on the same method ordered by Judge Ward with respect to all other AFDC households—namely, that mandatory payroll deductions be excluded from the income to which the disregards set forth in Section 402(a)(31) of the Act are applied. It is agreed by all parties that Sections 402(a)(8) and 402(a)(31) of the Act are parallel provisions, the only difference between them being that stepparents are permitted additional categories of disregards for amounts paid by the stepparent to support dependents other than those covered by AFDC benefits.

## II. *Probability of Success*

The Secretary of HHS (the "Secretary")[4] argues that because plaintiff seeks a preliminary injunction against government action affecting the public interest, she must demonstrate a probability of success on the merits, not simply the existence of fair grounds for litigation and a balance of hardships tipping decidedly in her favor. *Union Carbide Agriculture Co. v. Costle,* 632 F.2d 1014, 1018 (2d Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981). In this case, which presents a purely legal question of statutory construction that has now been addressed by several courts, the determination whether plaintiff has shown a probability of success is, in any event, not materially different from the determination whether she has presented a fair ground for litigation. Therefore, we apply the probability-of-success standard in addressing the issue presented by plaintiff's motion.

Since Judge Ward issued the preliminary injunction in *RAM, supra,* seven other district courts and one circuit court have considered the issue presented here and in *RAM.* To date, four district courts have resolved the issue in favor of plaintiff's position,[5] and four have resolved it in favor of the Secretary's.[6] Most recently, the

---

**2.** January 1, 1982 was the effective date of OBRA.

**3.** The Court's references to "plaintiff" in this opinion refer to plaintiff-intervenor Carmelina Buchanan. Buchanan's motion to intervene in this action was granted on February 17, 1983. This action was commenced in state court by the original named plaintiff, Marian Kelly, and was subsequently removed to federal court. Prior to removal of the case, Kelly obtained a stay of termination of her AFDC benefits by stipulation with the state. Neither Kelly nor the Commissioner of Rockland County Department of Social Services, the agency that directly administers Kelly's benefits, has participated in the proceedings on this motion.

**4.** The state and county social service agencies take no position on the correct interpretation of the provisions at issue here. *See* Affidavit of Seymour Katz, Director of the Income Support Bureau of the New York State Department of Social Services; Affidavit of Bruce J. Adams, Deputy County Attorney in the office of Edward G. McCabe, County Attorney of Nassau County, counsel for Joseph D'Elia and the Nassau County Department of Social Services.

**5.** In addition to the decisions in *RAM,* the decisions are: *Turner v. Woods,* 559 F.Supp. 603 (N.D.Cal.1982), *aff'd sub nom. Turner v. Prod,* 707 F.2d 1109 (9th Cir.1983); *Nishimoto v. Sunn,* 561 F.Supp. 692 (D.Haw.1983), *appeal docketed,* No. 83–1830 (9th Cir. Apr. 4, 1983); *Williamson v. Gibbs,* 562 F.Supp. 687 (W.D. Wash.1983), *appeal docketed,* No. 83–3725 (9th Cir. Apr. 7, 1983).

**6.** *Dickenson v. Petit,* 536 F.Supp. 1100 (D.Me. 1982), *aff'd on other grounds,* 692 F.2d 177 (1st Cir.1982); *James v. O'Bannon,* 557 F.Supp. 631 (E.D.Pa.1982), *appeal docketed,* No. 82–1438

Court of Appeals for the Ninth Circuit unanimously affirmed a lower court decision in favor of the plaintiffs in that case.[7]

As this division of opinion indicates, the legislative, regulatory and administrative materials relevant to the interpretation of Section 402(a)(7) and (a)(31) do not provide an unequivocal guide to the proper construction of those provisions. The plaintiff relies upon a long-standing administrative interpretation of Section 402(a)(7) according to which only income and resources "actually available" to an AFDC household may be considered in determining that household's level of need. *E.g.,* Social Security Board letter of December 20, 1940 (Ex.D to Pl. Ex.F) ("[a]ttributing a definite amount of income to sources or to kinds of property that produce either no income or less than the amount attributed to them is fictitious and such an imputed amount cannot properly be considered as an actual resource"). Plaintiff also points to administrative materials showing that mandatory payroll deductions have been treated separately from variable expenses that are more customarily considered "work expenses" such as transportation, food, clothing, and the like. *E.g.,* Handbook of Public Assistance Administration, 1963 (Ex. D to Pl.Ex. E) (providing detailed list of items qualifying as "work expenses" but not listing mandatory payroll deductions).

As to whether the OBRA amendments were intended to change Section 402(a)(7)'s definition of income, the plaintiff points out that the legislative history of the OBRA amendments contains virtually no discussion of mandatory payroll deductions or of any change in the principle that "income" as used in Section 402(a)(7) refers only to "actually available" income. The plaintiff also argues that treating mandatory payroll deductions as part of the income from which disregards are subtracted does not further Congress' expressed purpose in enacting the OBRA amendments—that is, to

ease administrative burdens, reduce fraudulent claims of work-related expenses and foster uniformity among the states in the treatment of AFDC recipients.

The Secretary responds by contending first that the plain meaning of the amended provisions requires the conclusion that only those amounts specified in Section 402(a)(31) may be deducted in computing stepparents' available income. To the extent that the legislative history of the disputed provisions must be consulted, the Secretary argues, that history indicates that "income" as used in Section 402(a)(7) referred to gross income even prior to OBRA. In support of this position the Secretary cites *Shea v. Vialpando,* 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974), a decision addressing the scope of work expenses allowable under pre-OBRA provisions ("any expenses reasonably attributable to the earning of income are deducted from gross income", *id.* at 254, 94 S.Ct. at 1750). The Secretary further contends that, even if her interpretation of the pre-OBRA provisions is incorrect, the legislative history of the OBRA amendments supports the conclusion that the $75 disregard is intended to replace all other job-related deductions including mandatory payroll deductions. The Secretary also argues for deference to the regulatory interpretation of Section 402(a)(31) set forth at 45 C.F.R. § 233.20(a)(3)(xiv), which requires that the $75 disregard be subtracted from the stepparents' gross income.

█ Unlike Judge Ward in the first *RAM* decision, this Court is not breaking new ground in addressing the conflicting interpretations of Congressional intent and administrative practice urged by the parties to the action. Having considered the various opinions on both sides of this issue, and the arguments of the parties, we are persuaded that the plaintiff is correct in her contention that "income" as used in Section

---

(3d Cir. July 21, 1982); *Bell v. Hettleman,* 558 F.Supp. 386 (D.Md.1983), *appeal docketed sub nom. Bell v. Massinga,* No. 83–1227 (4th Cir. March 15, 1983); *Gaston v. Schweiker,* No. 82–1337 (N.D.Ohio Mar. 1, 1983).

7. *Turner v. Prod,* 707 F.2d 1109 (9th Cir.1983).

402(a)(7) refers to income exclusive of mandatory payroll deductions. There is no reason to reiterate the thorough discussion set forth in both the *RAM* opinions, but we briefly note a few principal points.

First, the Secretary's argument that the proper interpretation of the provisions at issue here is clear from the statutory language alone is unpersuasive. Section 402(a)(7) requires the consideration of income except as provided in Section 402(a)(8) and (a)(31), but this does not compel the conclusion that those latter sections define "income" as used in 402(a)(7), as the Secretary contends. The pre-OBRA version of 402(a)(8) also listed specific income disregards, but those disregards were not treated as defining income as used in 402(a)(7). The Act simply does not define "income" as used in Section 402(a)(7).

Second, the plaintiff's citation of administrative practice persuasively establishes the long-standing policy of considering only amounts actually available to meet the needs of the AFDC household in determining the household's level of need, as well as the fact that mandatory payroll deductions for taxes were not subsumed under the category of "work expenses" but were nevertheless not considered part of available income. Moreover, *Shea v. Vialpando, supra,* upon which the Secretary relies for the proposition that Section 402(a)(7) referred to gross income even prior to OBRA, does not provide convincing support for the Secretary's position. Although *Shea* discusses the work-expense exclusions provided under the pre-OBRA version of Section

402(a)(7), the Court's attention in that case was not directed to the question of how "income" as used in that Section should be defined, and a determination of the issue simply was not relevant or necessary to the Court's holding in *Shea.*

Third, the exclusion of mandatory payroll deductions from income considered available to an AFDC household, and the mandate that only income actually available to an AFDC family be considered, are of such long standing that it is unreasonable to believe Congress would have altered those policies without explicitly indicating its intent to do so. The Secretary has pointed to no statements by any member of Congress or in any House or Senate report that comments on the inclusion of mandatory payroll deductions in the $75 figure to be allowed for work expenses,[8] even though it is clear that for many employed persons $75 does not cover withholding amounts alone, apart from any other expenses incurred as a result of employment.[9]

Equally important is the fact that the inclusion of mandatory payroll deductions within "income" as defined in Section 402(a)(7) does not further the Congressional purposes that were clearly articulated when the legislation was being considered. The Senate Report accompanying OBRA states, for example, that a $75 disregard was being substituted for individualized consideration of work expenses in order to curb abuses, lighten the administrative burden on states, and increase uniformity in the treatment of work expenses. S.Rep. No. 139, 97th Cong.,

---

**8.** The Secretary does refer to comments by two opponents of the OBRA amendments before Congressional committees which mention mandatory payroll deductions. *See Administration's Proposed Savings in Unemployment Compensation, Public Assistance, and Social Services Programs: Hearings Before the Subcommittee on Public Assistance and Unemployment Compensation of the Committee on Ways and Means, House of Representatives,* 97th Cong., 1st Sess. 88–89 (1981) (Statement of Christine Pratt-Marston); *Spending Reduction Proposals, Hearings Before the Committee on Finance, United States Senate,* Part 1, 97th Cong., 1st Sess. 227 (statement of Marian Wright Edelman). However, as noted by the recent Ninth Circuit opinion in *Turner v. Prod,*

*supra,* at 1119, such comments comprise only weak evidence of legislative intent. *See* 2A C.D. Sands, *Statutes and Statutory Construction, A Revision of the Third Edition of Sutherland on Statutory Construction* § 48.10 (4th ed. 1973). There is no way of determining whether Congress enacted the legislation despite such comments, or whether the comments were instead considered an inaccurate description of the effect of the legislation, or indeed to what extent they were noted at all.

**9.** Indeed, in the case of plaintiff, taxes withheld from her husband's monthly pay amount to $316.28.

1st Sess. 501–02, *reprinted in* 1981 U.S.Code Cong. & Ad.News, 396, 768. Plainly, these considerations are implicated by deductions for variable expenses such as transportation, food, work clothing, and the like, but not for mandatory payroll deductions for taxes. Certainly, uniformity among the states' treatment of AFDC recipients is not fostered by requiring that, whatever the amount of state and local taxes, a maximum of $75 will be deducted to take account of those amounts. Nor are we persuaded that, because Congress intended to cut the costs of the AFDC program by the enactment of OBRA, any interpretation of OBRA that maximizes cost-savings is presumptively consistent with Congress' intent. Rather, Congress' concerns as expressed, for example, in the Senate report cited above imply that Congress was not considering the issue of mandatory payroll deductions in altering the Act's provisions concerning work expenses, Sections 402(a)(8) and (a)(31). Thus, it follows that the Secretary's contrary interpretation of the effect of OBRA is not consistent with Congressional intent and is not entitled to deference in the circumstances presented here.

Plaintiff further argues that her right to equal protection is violated by the different treatment now accorded stepparent households in the calculation of available income as opposed to that accorded all other New York AFDC households. We agree that, if Congress had intended to require different treatment of stepparent households in this regard, a serious equal protection question would be raised. The Secretary did not contend, at oral argument, that such separate treatment was intended. As to the equal protection question presented by New York's differing treatment of stepparent households as a result of the order in *RAM*, that question is eliminated by our instant holding which is in accord with Judge Ward's.

For the reasons stated above, we conclude that plaintiff has established a probability of success on the merits.

### III. *Irreparable Harm*

The Buchanan household consists of Mr. and Mrs. Buchanan, their two minor children, and Mrs. Buchanan's two minor children from a previous marriage. The family's only source of income is Mr. Buchanan's monthly wages of $1,379.57, of which $889.96 is available to meet the Buchanans' needs after subtracting mandatory payroll deductions and court-ordered support payments for which Mr. Buchanan is responsible (Affidavit of Carmelina Buchanan, ¶¶ 3–4). If mandatory payroll deductions were subtracted from Mr. Buchanan's gross income before the disregards set forth in Section 402(a)(31) were subtracted, as plaintiff urges, plaintiff contends that she would be entitled to a monthly AFDC grant of $66.24 on behalf of her two children from her previous marriage. The Secretary argues, however, that the Court should only consider, in assessing the existence of irreparable harm, the amount to which Mrs. Buchanan would have been entitled at the time her benefits were terminated. At that time, because her fourth child had not yet been born, her grant would have been $14.54 if the method of calculating benefits urged by Mrs. Buchanan had been used. The Secretary argues that the loss of this amount does not constitute irreparable harm to the Buchanans.

We think that an assessment of irreparable harm should take into account the realities of the Buchanans' current situation. That assessment should also consider the fact that Mrs. Buchanan seeks to represent a class of all stepparent households affected by the post-OBRA changes in calculating AFDC grants—a motion not opposed by the Secretary—and that among those households the impact of those changes will vary. Even if the Secretary's figures are accepted, however, we believe that a finding of irreparable harm is warranted. There is a serious legal question whether plaintiff will be able to recover any amounts erroneously withheld pending ultimate resolution of her claims, and in light of the severe financial straits faced by Mrs. Buchanan any diminution of the in-

come to which she would otherwise be entitled is an extremely important matter. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *see also* N.Y.C. R.R. § 352.31(f).[10] The state, on the other hand, if it ultimately prevails, may be able to recoup overpayments by deductions from future benefit payments to eligible stepparent households. We conclude that the harm plaintiff will suffer through an erroneous denial of benefits is irreparable and outweighs the potential harm to the governmental entities responsible for funding the AFDC program. *See Hurley v. Toia,* 432 F.Supp. 1170 (S.D.N.Y.1977), *aff'd without opinion,* 573 F.2d 1291 (2d Cir.1977).

IV. *Class Certification*

As noted above, there is no opposition to Buchanan's motion for certification of this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. We are satisfied that the prerequisites set forth in Rule 23(a) and in Rule 23(b)(2) are met in this case, and accordingly certify a class consisting of all New York households with employed stepparents who apply for or receive AFDC benefits, or who have been denied or received AFDC benefits since January 1, 1982.

For the reasons stated above, the motions for class certification and for a preliminary injunction are granted.

Settle order on notice.

---

**10.** 18 N.Y.C.R.R. 352.31(f) provides for correction of underpayments to recipients, but provides that "judicial determinations which enjoin or declare invalid departmental policy do not create an underpayment." We note plaintiff's reservation of her right to dispute the validity of this regulation if and when final relief is ordered.